IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANTE A. JONES #370-155
    Plaintiff

v.     CIVIL ACTION NO. ELH-13-944

WARDEN KATHLEEN GREEN
DARRYL WEBSTER, FACILITY
  ADMINISTRATOR
JON R. SCRAMLIN, CASE MANAGEMENT
  SUPERVISOR
WILLIAM. DOYLE, CASE MANAGER
    Defendants[1]

**MEMORANDUM OPINION**

Plaintiff Dante A. Jones, a prisoner incarcerated at the Eastern Correctional Institution Annex in Westover, Maryland ("ECI-X"), claims a violation of civil rights based on defendants' refusal to assign him to an "outside" work detail, for which he seeks money damages and declaratory relief. Complaint, ECF No. 1, pp. 3-4. In particular, Jones asserts that his inability to be assigned "outside" work is "political," violates equal protection, and is influenced by racial prejudice and events that occurred during his prior incarceration.[2] *Id.*; *see also* ECF No. 10, p. 1. According to plaintiff, the denial of outside work was undertaken in "retaliation because of some issues [he has] brought to…officials['] attention. *Id.,* Attachment at 8. Further, he claims this "discrimination" is "intentional, and arbitrarial [sic] as there are no directives or regulations that address issues regarding a prior conviction, especially one overturned and its relevance to

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of the names of defendants Scramlin and Doyle.

[2] Plaintiff indicates that he was previously incarcerated under another Division of Correction ("DOC") identification number, and that his previous conviction was overturned on February 17, 2004. Complaint, ECF No. 1, Attachment, p. 7.

determining eligibility for outside work details."³ ECF No. 6, p. 1. Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 14), which plaintiff opposes.⁴ ECF No. 16.

**Standard of Review**

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one

---

³ This claim is made in the context of a motion for leave to file an amended complaint. As the claim was presented to the court within twenty-one days after defendants were ordered to respond to the complaint, it must be considered without the need for court order. *See* Fed. R. Civ. P. 15(a)(1)(A). Thus, while the claim shall be considered, its presentation by way of motion is unnecessary, and leave to file the amended complaint shall be denied as moot.

⁴ Plaintiff requests appointment of counsel and alleges that resolution of the case will require discovery, expert testimony, and trial by jury. ECF No. 10. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*. Upon careful consideration of plaintiff's filings, the court finds that plaintiff, a frequent federal litigator, has demonstrated the wherewithal either to articulate the legal and factual basis of his claims himself or to secure meaningful assistance in doing so. The issues pending before the court are not unduly complicated and neither discovery nor a hearing is necessary to the disposition of this case. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent plaintiff under §1915(e)(1).

for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5] In any event, in accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), plaintiff was informed of his right to file a response to the Motion, and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF 15. As noted, he filed an opposition.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties" procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

"whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Plaintiff has not filed an affidavit under Rule 56(d). But, he has filed his own opposition, supported by his Declaration, filed under penalty of perjury, as well as several exhibits. In addition, he attached several exhibits to his Complaint. Therefore, I am satisfied that it is appropriate to address defendants' motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.

*Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The Fourth Circuit has explained that the party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). However, the court must "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility. *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[i]t is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.,* 477 U.S. at 323-24).

**Discussion**

Plaintiff states that he was transferred from the Maryland Correctional Institution-Hagerstown ("MCI-H") to ECI-X on October 10, 2012. ECF 1, p. 3. On October 24, 2012, defendant Doyle, a case manager, conducted plaintiff's initial case management interview. The discussion included plaintiff's security status and program eligibility. *Id*. Plaintiff asserts he asked about his eligibility to participate in an outside work detail and contends that Doyle indicated that it "should not be a problem," and provided plaintiff with "a list of areas of work opportunities and points of contact." *Id*.

Jones notes that he submitted a request slip to Doyle on November 14, 2012, inquiring as to the specific type of outside jobs he would be eligible to perform. *Id*. Plaintiff alleges that on January 3, 2013, he received an ambiguous response to his request from Doyle, who later that day told plaintiff that any decision was "political" and based on plaintiff's "prior incarceration and events that occurred." *Id*. Plaintiff states that on the same day he wrote to defendant Scramlin, a case management supervisor, but received no response. *Id*., p. 3 and Ex. 3. Plaintiff also states that on February 13, 2013, he wrote to defendant Green, ECI's Warden, and defendant Webster, a facility administrator, but received no response.[6] *Id*., pp. 3-4 and Exs. 4-5. In his motion for leave to file an amended complaint, plaintiff implies that defendants' racially discriminatory intent can be inferred because there are no DOC directives or regulations that

---

[6] Plaintiff indicates that he unsuccessfully attempted to exhaust administrative remedies concerning the denial of outside work. He filed a Request for Administrative Remedy, which was dismissed on March 1, 2013. ECF No. 1, p. 4 and Ex. 7 (a-e). Plaintiff also filed a grievance with the Inmate Grievance Office ("IGO") on or about January 8, 2013, but the grievance was dismissed on March 4, 2013, on the ground that it was "wholly lacking in merit. . . ." ECF No. 1, p. 4 and Ex. 6. It does not appear that plaintiff sought administrative review of the IGO decision in state circuit court. However, defendants have not raised plaintiff's failure to exhaust administrative remedies as an affirmative defense, nor do they provide information as to what administrative remedies would be available to a prisoner in a like situation. Thus, I decline to consider the question of exhaustion here.

address whether prisoners can be excluded due to prior convictions or the weight such convictions should be given when officials are making a determination regarding eligibility for outside work details. ECF No. 6, p. 1.

Plaintiff's conclusion is not borne out by defendants' declarations and documentary evidence. In his declaration, Doyle avers that, during the relevant time period, he was assigned as plaintiff's case manager. ECF No. 14, Ex. Doyle notes that plaintiff currently is confined under Division of Correction ("DOC") ID #370-155 following a conviction for first-degree assault. *Id*., Ex. 1, ¶3. Doyle states that due to plaintiff's extensive criminal history, which includes charges of assault on a DOC employee, concealing contraband in jail, and a felony fugitive extradition warrant from the Commonwealth of Virginia, he found plaintiff to be an unacceptable risk for outside work. *Id.,* ¶ 4. In addition, Doyle notes that plaintiff had been incarcerated under DOC ID #280-468 for first-degree rape and a sex offense, but successfully appealed and thereafter pleaded guilty to second-degree assault.[7] *Id.* Doyle has expressed concern because plaintiff's home plan once released lists Wicomico County as his intended residence, and the offense for which he currently is incarcerated occurred in adjacent Dorchester County. Doyle contends that plaintiff is a risk to public safety,[8] and that his latest victim's safety could be compromised due to the proximity of the victim should plaintiff escape from an outside work detail. *Id*.; *see also* Ex. 4. Commitment Record dated July 12, 2011.

Defendants provide a portion of DOC Case Management Manual: DOC.1.0002, entitled "Outside Detail Participation." which lists five factors to be considered before a prisoner is

---

[7] As a result of the plea, plaintiff, then incarcerated on DOC ID #280-468, was sentenced to five years' incarceration and released on time served.

[8] Defendants include a 2011 special court investigation report prepared by the Department of Public Safety and Correctional Services ("DPSCS"), Division of Parole and Probation, listing the fifty-year-old plaintiff's decades-long history of serious convictions.

assigned an outside work detail, including whether the prisoner (1) is classified to minimum or pre-release security; (2) is within five years of an anticipated release date; (3) has no scoreable open charges or detainers; (4) has not escaped within the last 10 years; and (5) does not have to register as a sex offender upon release. ECF No. 14, Ex. 5, Case Management Manual DOC.100.0002 §5k, p. 33. Defendants do not assert that any of these factors is sufficient to bar plaintiff from participating in an outside work detail and provide no details regarding plaintiff's current classification status or anticipated release date.[9] This dearth of factual information, however, is not dispositive of this case.[10]

## Analysis

Plaintiff claims defendants' decision to deny him assignment to an outside work detail was made in retaliation for his complaints regarding other prison issues, and improperly based on a previous conviction that had been overturned on appeal. Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann,* 408 U.S. 593, 597 (1972). However, "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, Md., 999 F.2d 780, 785 (4th Cir. 1993). "In the prison context," such claims are treated "with skepticism because '[e]very act of discipline by prison officials is by definition

---

[9] Plaintiff was sentenced on July 12, 2011, to twelve years' incarceration following the first-degree assault conviction, with five years suspended. ECF No. 14, Ex. 4.

[10] Defendants argue that plaintiff has failed to articulate a constitutional claim and that they are entitled to dismissal based on the doctrine of respondeat superior or entitled to judgment because they are protected by qualified immunity. Because there is no constitutional violation arising from the decision not to assign plaintiff to an outside work detail, defendants' remaining arguments need not be considered.

"retaliatory" in the sense that it responds directly to prisoner conduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

In order to prevail on a claim of retaliation, plaintiff must show that a retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. *See Adams*, 40 F.3d at 75. Plaintiff must also show that the alleged retaliatory action (here, the failure to provide him with an outside work detail) was the "actual motivation factor" that led to the adverse action (*i.e.*, the denial of the work assignment). *See McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir. 1979). A claim that alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone. *See Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996).

Plaintiff, who is African-America, claims the decision to assign him to an outside work detail was racially motivated. As previously noted, in order to show a civil rights violation with respect to a prison job assignment, plaintiff must demonstrate that the actions taken against him impacted on the exercise of a constitutionally protected right. Prisoners, however, do not have a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned. *See Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978); *Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992);. DOC.100-.0002 provides that outside detail participation "serves to provide beneficial work experience and to prepare an inmate for eventual work release assignment." Participation, however, is not an entitlement. Instead, a prisoner "*may* be considered for placement" if the factors favor same. *Id.* (emphasis added). Indeed, nothing in the language of the DCD suggests that outside detail participation is mandatory, even for those who meet the criteria for placement in the program.

Clearly, the regulation at issue here does not guarantee outside detail participation under any circumstance. A classification decision does not implicate a protected liberty interest or state a claim under § 1983. *See Meachum v. Fano*, 427 U.S. 270 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir.). For example, a prisoner has no liberty interest in being housed in any particular facility, *see Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983), and is not entitled as a matter of constitutional law to be housed at any particular security classification or prison, absent detailed "state law regulations which in the end effectively say to inmates: 'if facts A, B, and C are established in an appropriate fact-findiig process, you are thereupon legally entitled to a more favorable security or custody classification…or are legally entitled not to be placed in a less favorable classification than you now have." *See Slezack v. Evatt*, 21 F. 3d 590, 595 (4th Cir. 1994).

Notably, plaintiff has a lengthy criminal history that includes convictions for violent crime, assault on corrections personnel, and concealing contraband. His current place of confinement is relatively near the home of his latest victim. Nothing suggests that plaintiff's overturned rape conviction has been used as a basis for denying his assignment to an outside detail, and nothing suggests that Caucasian prisoners with a similar history routinely receive such assignments. The DCD applies to all prisoners, regardless of race. Plaintiff's claim simply lacks evidentiary support and thus fails.

Summary judgment will be granted in favor of defendants. A separate Order shall be entered in accordance with this opinion.

September 25, 2013  /s/
(Date)  Ellen L. Hollander
  United States District Judge